IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA AKINS, Individually and as Administratrix of the Estate of DALE AKINS, Deceased, | )<br>)<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO. 3:05-451 |
| v. | )<br>)<br>) |
| RADIATOR SPECIALTY COMPANY and USX CORPORATION, formerly known as U.S. STEEL COMPANY and U.S. STEEL CORPORATION, | ) JUDGE GIBSON<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the Plaintiff's Motion for Remand (Document No. 61). For the reasons stated herein, the Plaintiff's Motion will be granted.

This matter was initiated through the filing of a Complaint in the Pennsylvania Court of Common Pleas for Philadelphia County. The Complaint contained six counts which included the state law claims of strict products liability, negligence, breach of warranty, breach of implied warranty of merchantability, wrongful death and a survival claim, for the death and other injuries suffered by the deceased because of his alleged exposure to a product called "Liquid Wrench." "Liquid Wrench" was a product allegedly used by the decedent during the period of 1954 through 1979, and with which he came in contact through his skin and inhalation of its fumes in his work as a plumber when using

"Liquid Wrench" for cleaning tools and pipes along with other uses. Complaint (Document No. 68, Exhibit 1) ¶¶ 15-18, 24. "Liquid Wrench" was a product of Defendant Radiator Specialty Company (hereinafter "Radiator"). Complaint ¶ 17. It is alleged that "Liquid Wrench" contained an "active ingredient" named "Raffinate", which was supplied to Radiator by Defendant USX Corporation and/or its predecessor corporations U.S. Steel Company and U.S. Steel Corporation (hereinafter collectively "USS"). Complaint ¶ 19. Raffinate is alleged to contain at least 5% of the compound benzene, a compound alleged to be a known cause of Leukemia. Complaint ¶¶ 20-22. It is alleged that the decedent's exposure to "Liquid Wrench" lead to his contracting "acute myeloid Leukemia and/or acute myelogenous Leukemia" which in turn resulted in his death on December 18, 2002. Complaint ¶ ¶ 24-25.

After being filed in the Court of Common Pleas of Philadelphia County, this civil action was removed pursuant to 28 U.S.C. § 1441, subsections (b) and (c), to United States District Court for the Eastern District of Pennsylvania on February 17, 2005 by Radiator with the consent of USS. The removal of this action by Radiator was based upon the argument that any of the Plaintiff's state law claims for inadequate warning/instruction or failure to warn/instruct are not permitted to be prosecuted in state courts because the Federal Government has pre-empted this field of litigation through its enactment of the Federal Hazardous Substances Act (hereinafter "FHSA"), 15 U.S.C. § § 1261- 1278, through which uniform national warnings of hazardous substances are mandated. The United States District Court for the Eastern District of Pennsylvania transferred this matter to this Court on November 3, 2005. The Plaintiff filed the Motion for Remand on February 1, 2006 claiming that this Court lacks subject matter jurisdiction over this action in that no federal question is presented. Although other

motions are pending in this matter, this question of subject matter jurisdiction must be resolved before proceeding further. The Plaintiff's Motion for Remand is timely in that it raises issues of subject matter jurisdiction. 28 U.S.C. § 1447(c).

First, the Court must address the issue of the basis for the removal. The applicable removal statute, 28 U.S.C. § 1441, is "strictly construed against removal." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005). The removal is based upon the claim that the Plaintiff's civil action is one "arising under" federal law, specifically the FHSA. Defendants' Notice of Removal (Document No. 60), p. 5; 28 U.S.C. § 1441(b). The Defendants also indicated as a basis for removal 28 U.S.C. § 1441(c), which permits removal as to all of the Plaintiff's state law claims with any federal law claims.

The Defendants have presented in their response a "new and independent basis for federal question jurisdiction" citing the Consumer Product Safety Act (hereinafter "CPSA"), specifically 15 U.S.C. § 2072, permitting federal jurisdiction for civil actions sounding in tort for a violation of the "safety rule." Defendants' Response (Document No. 75), p. 2.[1] The Plaintiff disagrees with this new additional basis for jurisdiction and argues that it may not be considered an amendment of the notice of removal citing *ARCO Envtl. Remediation v. Dept of Health and Envtl. Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000). The Court agrees with the Plaintiff that a new basis for this Court's removal jurisdiction may not be added at this time. *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205-206 n. 11 (3d Cir. 2003).

Now, in consideration of the Plaintiff's argument for remand, the Court must first evaluate the

---

[1] USS has joined in this response. See Document No. 74.

3

Plaintiff's Complaint with reference to the "well-pleaded" complaint rule. "[F]or purposes of removal jurisdiction, 'the well-pleaded complaint rule requires [that] the federal question be presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First National Bank*, 299 U.S. 109, 112-13[,57 S.Ct. 96, 97-98, 81 L.Ed.70].'" *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir. 1989) *citing Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie Railroad Co.* 858 F.2d 936, 939 (3d Cir. 1988). Thus, a plaintiff may control which court possesses subject matter jurisdiction over her complaint through the allegations she presents. It is further noted that a defendant may not remove a state civil action to a federal district court through the pleading of a "federal defense." *Allstate* at 93 *citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). This includes the defense of "preemption", but if an area of law has been preempted in its entirety by the Federal Government, the "complete preemption" doctrine applies. *Caterpillar* at 393, 107 S.Ct. at 2430, 96 L.Ed.2d at 327-328. The "complete preemption" doctrine provides for the conversion of a state law claim into a federal law claim when a federal law has the force of preempting any state law touching upon the area of the law preempted by the federal law. *Id.*

The Third Circuit has explained the concept of the "complete preemption" doctrine as follows:

A state claim which is "really one of federal law" may be removed to federal court because "it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22, 103 S.Ct. at 2853. The Supreme Court has held that a state cause of action is "really" a federal cause of action which may be removed to federal court if the "federal cause of action completely preempts ⋯ [the] state cause of action." *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. at 2854   This principle is "known as the 'complete preemption' doctrine," *Caterpillar, Inc. v. Williams*, 482 U.S. at 393, 107 S.Ct. at 2430, and it is "a distinct concept from ordinary preemption." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 941 (3d Cir. 1988) [FN5] Thus, " '[t]he fact that a defendant might ultimately

4

prove that a plaintiff's claims are pre-empted ⋯ does not establish that they are removable to federal court.'" *Id.* (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. at 398, 107 S.Ct. at 2432).[FN6]

> [FN5]"This same principle has been referred to elsewhere as the 'artful pleading' doctrine, under which a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim." *United Jersey Banks v. Parell,* 783 F.2d at 367 (citations omitted). *See also Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981) ("As one treatise puts it, courts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum ⋯ [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization") (quoting 14C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3722 at 564-566 (1976) (citations omitted)).

> [FN6]"[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the fe deral defense is the only question truly at issue." *Caterpillar, Inc. v. Williams,* 482 U.S. at 393, 107 S.Ct. at 2430 (citing *Franchise Tax Bd.,* 463 U.S. at 12, 103 S.Ct. At 2847-48).

*Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 310-311 (3d Cir. 1994). *See also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55, 62-63 (1987). Complete preemption has been recognized by the Supreme Court through only four areas of federal law: "Section 301 of the Labor Management Relations Act, Section 502(a) of [the Employee Retirement Income Security Act]", "certain Indian tribal claims" and "Sections of the National Bank Act." 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE, § 3522 (2d ed. Supp. 2006).

Recently, the Supreme Court addressed the issue of subject matter jurisdiction within the district

courts when such jurisdiction is claimed to exist over complaints filed in state courts and containing only state law claims. In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), the Supreme Court, in reviewing an issue regarding the manner of proper service by the Internal Revenue Service of an owner of property that was subject to seizure under the internal revenue code, concluded that the owner's post-seizure civil action in state court to quiet title to the property was properly removed to a federal district court. The Supreme Court used the *Grable* opinion to set forth the standard with which federal district courts could assume subject matter jurisdiction civil actions based solely on state-law claims, but which also embrace issues of federal law:

> These considerations have kept us from stating a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 821, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (STEVENS, J., concurring). We have not kept them out simply because they appeared in state raiment, as Justice Holmes would have done, see *Smith, supra,* at 214, 41 S.Ct. 243 (dissenting opinion), but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. *Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.*

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, ___, 125 S.Ct. 2363, 2368, 162 L.Ed.2d 257, 265 (2005)(emphasis added). The *Grable* Court also took the opportunity to explain the Court's previous holding in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), particularly the consideration to be given to the factor of the existence of a federal cause of action when determining whether to assume jurisdiction of a civil action

based upon state law claims:

> Accordingly, *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected *Merrell Dow's* result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and *no preemption of state remedies* for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 2370, 162 L.Ed.2d 257, 267 (2005)(emphasis added).

The Court agrees with the Plaintiff and finds that *Grable* is the operative standard to be applied in determining the present question of subject matter jurisdiction. Plaintiff's Brief, pp. 11-12. *See also Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc., et al.* 415 F.Supp.2d 516, 524 (E.D.Pa. 2005). The question that remains for this Court which was not addressed by the slip opinions submitted by the Plaintiff is where the analysis of preemption fits within the *Grable* analysis, if at all. The Court notes that an analysis of the type of preemption plays a role in the "judicial responsibilities" prong of the *Grable* standard. *Grable, supra. Grable* touches upon the role played by federal statutes in creating the applicable standard for state negligence claims and reflects that *Merrell Dow* considered this aspect along with the absence of a federal cause of action to conclude that Congress did not intend

7

that the federal courts assume jurisdiction over the misbranding cases at issue in *Merrell Dow*. *Grable* at ___, 125 S.Ct. 2363, 2370-2371, 162 L.Ed.2d 257, 267-168.

The Plaintiff in the case *sub judice* bases her claims concerning inadequate warning and failure to warn upon state law actions without mention of the use of the FHSA as setting forth a negligence *per se* standard or applicable standards for her strict products liability and breach of implied and express warranty and breach of implied warranty of merchantability claims. Complaint ¶¶ 31-52.

The Plaintiff admits in her brief that the FHSA has preempted state laws to the extent such laws require a standard for hazardous substances warnings different from the standards imposed by the FHSA, but argues that such preemption only presents a defense to state law claims such as hers. Plaintiff's Brief, pp. 7-8. The Defendants agree that Congress intended that the FHSA preempt state law regarding hazardous substances, but view such preemption as complete preemption. Defendants' Brief, pp. 4-28.

Evaluating the law and arguments in this matter, the Court finds that remand is necessary. In evaluating the first prong of the *Grable* standard, the extent of preemption is disputed by the parties along with other bases of this Court's jurisdiction, but even more in question is the substantiality of the federal issue in this case. Clearly, the FHSA presents a uniform labeling standard for substances within its control, but does not create a separate federal cause of action. While *Grable* instructs that the absence of a Congressional-created federal cause of action does not doom a federal issue to the destiny of a remand to a state court, it is a factor to be considered.

Another factor illustrative of the substantiality of the federal issue in the case *sub judice* is the

8

concern that litigating this issue in fifty different states and applying the applicable state common law or statutory duties of the various jurisdictions would work against the uniform standards set forth by Congress in this statute, thereby virtually rendering the federal system under the FHSA ineffectual. However, this same argument was presented in *Merrell Dow*. The Supreme Court rejected such an argument noting that a "concern about the uniformity of interpretation...is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of action, this Court retains power to review the decision of a federal issue in a state cause of action." *Merrell Dow* at 816, 106 S.Ct. at 3236, 92 L.Ed.2d at 663. The Supreme Court suggested in *Merrell Dow* that the petitioner in that matter should have argued for the application of preemption in that circumstance. *Id.*

Since the Defendants have argued for complete preemption, the Court will consider its application to the case *sub judice*. The Supreme Court has only found complete preemption in four areas of federal law as mentioned above. The Court finds that the case *sub judice* does not present an instance of complete preemption as the effect of the FHSA is not so powerful as to preclude any state law actions regarding matters embraced by it; the Court does not view the Plaintiff's civil action as one arising under federal law alone. *See Franchise Tax Bd. of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 23-24, 103 S.Ct. 2841, 2853-2854, 77 L.Ed. 420, (1983). This Court does not view the FHSA as having a preemptive force sufficiently powerful to "displace" related state causes of action. *Franchise Tax Bd.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed. 420, 439-440 (1983).

In its research, the Court has considered the opinion of then-District Judge Lewis in *Lee v.*

9

*Boyle-Midway Household Products, Inc.,* 792 F.Supp 1001 (W.D.Pa. 1992) wherein he concluded that the FHSA had impliedly, not expressly, preempted the field of warning labels for hazardous substances and thus precluded Pennsylvania common law actions that could in essence result in a labeling requirement being imposed that was not approved by the Consumer Products Safety Commission (hereinafter "CPSC"). *Lee* at 1007-1008. Judge Lewis also observed that the FHSA sets forth minimum requirements for labeling and that states may petition to establish more rigorous requirements with the approval of the CPSC. *Id.* at 1008. It was Judge Lewis' conclusion that common law actions set forth additional requirements for warning labels without the approval of the CPSC and thus would "frustrate [the FHSA] scheme." *Id.*

In light of the large amount of precedent embracing the issues of the "well-pleaded complaint rule", preemption and now the *Grable* opinion, this Court concurs with the thoughts of Justice Scalia in his dissent in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 11-22, 123 S.Ct. 2058, 2064-2070, 156 L.Ed.2d 1, 10-17, (2003) that clarity is lacking in understanding which factors should be considered in order to determine if a federal statute is one that completely preempt state laws that govern the same matters. However, despite the absence of clarity, this Court cannot agree that the FHSA is a federal statute that completely preempts parallel state laws regarding the same subject matter.

A closer look at the *Lee* opinion reveals a failure to consider one aspect of the FHSA scheme. In his analysis Judge Lewis relies upon the legislative reports of the House of Representatives and

10

Senate as well as 15 U.S.C. § 1261, note (b).[2] This Court disagrees with the *Lee* analysis in that should

---

[2]This note reads as follows:

"(b)(1)(A) Except as provided in paragraphs (2) and (3), if a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title].

"**(B)** Except as provided in paragraphs (2), (3), and (4), if under regulations of the Commission promulgated under or for the enforcement of section 2(q) [subsec. (q) of this section] a requirement is established to protect against a risk of illness or injury associated with a hazardous substance, no State or political subdivision of a State may establish or continue in effect a requirement applicable to such substance and designed to protect against the same risk of illness or injury unless such requirement is identical to the requirement established under such regulations.

"**(2)** The Federal Government and the government of any State or political subdivision of a State may establish and continue in effect a requirement applicable to a hazardous substance for its own use (or to the packaging of such a substance) which requirement is designed to protect against a risk of illness or injury associated with such substance and which is not identical to a requirement described in paragraph (1) applicable to such substance (or packaging) and designed to protect against the same risk of illness or injury if the Federal, State, or political subdivision requirement provides a higher degree of protection from such risk of illness or injury than the requirement described in paragraph (1).

"**(3)(A)** Upon application of a State or political subdivision of a State, the Commission may, by regulation promulgated in accordance with subparagraph (B), exempt from paragraph (1), under such conditions as may be prescribed in such regulation, any requirement of such State or political subdivision designed to protect against a risk of illness or injury associated with a hazardous substance if--

"**(i)** compliance with the requirement would not cause the hazardous substance (or its packaging) to be in violation of the applicable requirement described in paragraph (1), and

"**(ii)** the State or political subdivision requirement (I) provides a significantly higher degree of protection from such risk of illness or injury than the requirement described in paragraph (1), and (II) does not unduly burden interstate commerce.

In determining the burden, if any, of a State or political subdivision requirement on interstate commerce the Commission shall consider and make appropriate (as determined by the Commission in its discretion) findings on the technological and economic feasibility of complying with such requirement, the cost of complying with such requirement, the geographic distribution of the substance to which the requirement would apply, the probability of other States or political subdivisions applying for an exemption under this paragraph for a similar requirement, and the need for a national, uniform requirement under this Act [this chapter] for such substance (or its packaging).

"**(B)** A regulation under subparagraph (A) granting an exemption for a requirement of a State or political subdivision of a State may be promulgated by the Commission only after it has provided, in accordance with section 553(b) of title 5, United States Code, notice with respect to the promulgation of the regulation and has provided opportunity for the oral presentation of views respecting its promulgation.

15 U.S.C.A. § 1261

11

Congress be the gatekeeper for the minimum standards for the FHSA, and thereby permit a more stringent state regulation, a state cause of action created by statute after the federal approval of a more stringent labeling regulation may exist alongside the federal FHSA scheme and thus not mandate a removal to federal district court everytime it is filed within that state. 15 U.S.C. § 1261, Note, "Effect Upon Federal and State Law" § (b)(3)(A)-(B).

In considering a different scenario, a state, desiring to have its more stringent common law of tort regarding labeling matters come within the purview of the FHSA, may seek to have a more stringent regulation, one that mirrors its already existing common law precedent, adopted by the CPSC. If the CPSC grants permission for such a more stringent regulation, the state's already existing common law can remain the same with regard to labeling issues. Thus, the statutory scheme of the FHSA contemplates enforcement by the various states so long as approval by the CPSC is achieved. It is difficult for the Court to envision complete preemption within a statutory scheme that creates a baseline requirement and that regulates the use of more stringent requirements, but permits the various states to be exempt from the federal version of the regulations. Minimum standards appear to have been the goal of the FHSA, but uniformity of law and removal of all issues of the labeling of hazardous substances by the states is not demonstrated by the effect of the FHSA. For the sake of completeness, the Court also reviews the second prong of *Grable*: consideration of the effect that reviewing the federal issue will have upon "any congressionally approved balance of federal and state judicial responsibilities." *Grable* at ___, 125 S.Ct. 2363, 2368, 162 L.Ed.2d 257, 265. *Grable* provided insight into the holding of *Merrell Dow* and indicated that the absence of a federal cause of action does

not automatically mandate remand of a civil action containing a federal issue, but that it is a factor to be considered regarding the question of remand. *Grable* at ___, 125 S.Ct. 2363, 2370, 162 L.Ed.2d 257, 267. As set forth previously in the Memorandum Opinion, *Grable* then provides further analysis that is directly on point with the issue in the case *sub judice*:

> The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, ___, 125 S.Ct. 2363, 2370, 162 L.Ed.2d 257, 267. (2005).

Indeed, had it been the intent of Congress that United States District Courts were to have subject matter jurisdiction over any state law claims embracing an issue of labeling of a hazardous substance, cases involving a whole area of state tort liability law could potentially flood our federal trial courts. Additionally, when the FHSA permits a vehicle for the states to apply for and obtain approval of labeling standards more stringent than found in the FHSA, the District Courts within such states would be applying the standards requested by a state and approved by the CPSC. In particular, in those hypothetical situations where a state may seek and obtain approval of a regulation that mirrors the standards already present in its common law, the granting of such an imprimatur by the FHSA on such law would, in expanding upon Judge Lewis' logic, make a state cause of action a federal cause of action, relieving the state courts from trying claims based upon state law and thus impacting the dockets

of the district courts. Clearly the district courts are capable of applying state substantive law as is traditionally done in civil actions filed pursuant to 28 U.S.C. § 1332. Nevertheless, a federal statutory scheme that would present at the doors of the District Courts any civil action based entirely upon state law claims, but which contain within them an embedded federal issue regarding the labeling of hazardous substances seems to be contrary to the intent of Congress. The jurisdiction of the district courts is traditionally limited. Accordingly, to read the FHSA as creating an area of complete preemption would indicate a thread of distrust by Congress of the states' ability to adjudicate their legally established causes of action as well as a willingness to accept for adjudication a field of negligence, products liability and related claims, neither of which propositions this Court finds to be within the FHSA statutory scheme and the jurisdictional powers of district courts in general.

Moreover, the *Grable* Court conceived that such federal standards present the basis of "negligence per se" claims in state courts. *Grable* at ___, 125 S.Ct. 2363, 2370, 162 L.Ed.2d 257, 268. No basis has been presented to establish the proposition that state courts are incompetent to apply federal law or standards when presiding over trials. Despite the fact that the Plaintiff has not plead the FHSA standards as the basis for a cause of action, nothing prevents the Defendants from proposing the FHSA labeling standards as a basis for entry of summary judgment, directed verdict at trial, or a point for charge for the jury for those issues embracing questions of the standard for labeling of "Liquid Wrench." As the Supreme Court indicated in *Merrell Dow*, *supra*, should the state courts improperly apply or even fail to apply the applicable federal standard, review by the Supreme Court of the federal issue can be obtained. The Plaintiff already concedes that the FHSA presents a basis for "defensive" preemption. Plaintiff's Brief, pp. 7-8.

14

Therefore, in light of the conclusion that there does not exist a substantial federal issue in the case *sub judice* and the balance of "judicial responsibilities" would be shifted from the state courts to the federal courts in such a manner that would be contrary to the FHSA and this Court's jurisdiction under 28 U.S.C. § 1331, the Court will grant the Plaintiff's motion.[3]

**AND NOW**, this 29th day of September 2006, in consideration of the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Plaintiff's Motion for Remand (Document No. 61) is GRANTED and the Clerk of Court is directed to transmit to the state court in which this case was originally filed a copy of this Memorandum Opinion and Order along with all other documents of record filed during the pendency of this action in this Court.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

---

[3] The issue of whether venue of this action in the State Court system is properly in the Philadelphia County Court of Common Pleas is not before this Court and, therefore, is not addressed in this Memorandum Opinion. This is an issue for resolution by the State Court system. The Court does, however, note that the United States District Court for the Eastern District of Pennsylvania transferred this case to this Court pursuant to Defendant United States Steel Corporation's Motion to Transfer Venue. *See* Document No. 60 at C.A. No. 3:05-451, and attached Document No. 59, Order granting Motion for Transfer of Venue.

15